UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA M. PALMER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 19-cv-11020
Magistrate Judge Patricia T. Morris
Honorable Laurie J. Michelson

**OPINION AND ORDER
REJECTING MAGISTRATE JUDGE'S RECOMMENDATION [18],
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15],
AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
[14]**

At times relevant to this case, Tina Palmer suffered from chronic obstructive pulmonary disease and asthma, an arthritic right hip that necessitated a total hip replacement in January 2017, an arthritic left hip, and obesity. Because of these and other conditions, Palmer thought that she could not work a fulltime job. So she applied for disability benefits from the Social Security Administration, alleging that she became disabled in July 2016. (PageID.66.)[1]

Almost two years later, in August 2018, an administrative law judge, acting on behalf of the Commissioner of Social Security, found that Palmer was not "under a

---

[1] Unless indicated otherwise, all record citations are to the administrative record, ECF No. 11.

disability" as that term is used in the Social Security Act. (PageID.75.) As such, Palmer was not awarded disability benefits.

That prompted Palmer to file this lawsuit, effectively appealing the Commissioner's disability determination. As with all social security cases filed in this federal district, Palmer's case was referred to a magistrate judge for a report and recommendation. Magistrate Judge Patricia T. Morris recommends that this Court affirm the Commissioner's decision. (ECF No. 18.)

Palmer objects to that recommendation. (ECF No. 21.) She makes three objections, each tracking the three arguments she made to the magistrate judge. (*See id.*) As such, the Court will consider Palmer's arguments anew. *See* 28 U.S.C. § 636 ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

As will be explained, the Court will sustain one of Palmer's objections and remand this case to the Commissioner for further adjudication.

I.

One of Palmer's arguments (and objections) is that the ALJ failed to adequately explain why he omitted a limitation for her use of a cane from his residual functional capacity assessment. (ECF No. 14, PageID.927–930; ECF No. 21, PageID.1006.)

Prior to step four of the disability determination process, an ALJ is required to assess a claimant's residual functional capacity (RFC). Essentially, the claimant's RFC is the most

2

a claimant can do despite her impairments. *See* SSR 96-9p, 1996 WL 374185, at *1–2 (July 2, 1996). So, for example, if a claimant has carpal tunnel syndrome, an ALJ might find that the claimant's ability to manipulate small objects is limited to one hour per eight-hour workday. Thus, an RFC is made up of a series of limitations.

As for the RFC in this case, the ALJ found that despite her chronic obstructive pulmonary disease (COPD), hip problems, obesity, and other conditions, Palmer was able to perform "light work . . . except she needed to sit/stand at will" and was able to "occasionally climb, balance, stoop, kneel, crouch, and crawl." (PageID.70–71.) (The ALJ included several other limitations, but those are not now relevant.) And, by definition, "Light work involves lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." *See* 20 C.F.R. § 404.1567(b) (emphasis added). In turn, "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). In his RFC assessment of Palmer, the ALJ did not include any limitation specifically for Palmer's use of a cane.

Yet there was evidence that Palmer needed to use a cane. In her self-completed function report, Palmer indicated that she had been prescribed a cane in 2015 (PageID.304); a prior disability determination (for a prior application not now at issue) also noted that Palmer had been prescribed a cane in 2015 (PageID.123). In June 2016, Dr. Charles Taunt noted, "assistive devices have included: cane." (PageID.502.) And in early 2017, following

3

Palmer's right-hip replacement, Dr. Taunt wrote, "The following support device is used: cane for long walks." (PageID.516, 519.) ("[L]ong" is relative: the same treatment notes indicate that Palmer was walking "less than 5 blocks." (PageID.516, 519.)) Even in January 2018, a year after her right-hip replacement, Dr. Taunt noted, "The current limp pattern is: moderate. The following support device is used: cane for long walks. Walking distance: less than 5 blocks." (PageID.902.)

Moreover, Palmer testified about her use of a cane at the May 2018 hearing before the ALJ. She told the ALJ that she used a cane "at least four times a week," that she took it with her "wherever" she went, that she "always" made sure it was in her or her husband's car, and that she would use it when shopping or walking outside. (PageID.106.) Palmer stated that she did not use her cane much inside her house because there were things she could hang onto in the house. (*Id.*)

So, to sum up so far, the ALJ omitted a limitation specifically for cane use in his RFC assessment of Palmer but there was evidence that Palmer used, and needed to use, a cane. That leads to this question: "Why?"

The answer is not apparent from the RFC itself. Perhaps if the RFC were for "sedentary" work, it would have been plain why no cane limitation was included: by definition, sedentary work demands only standing or walking for two hours a day, lifting only 10 pounds, and carrying only lightweight objects like "docket files, ledgers, and small tools." SSR 83-10, 1983 WL 31251, at *5. At least some individuals who use canes could perform those low-exertion tasks. But the ALJ assessed Palmer at the more-demanding "light" work. And, recall, that exertion level requires standing or walking for six hours a

4

day, lifting 20 pounds, and frequently carrying 10-pound objects. Those higher-exertion demands seem beyond the ability of someone in their early 50s, who is obese, who has a right-hip replacement and an arthritic left hip, and who uses a cane at least sometimes. The ALJ certainly thought as much, as he tempered his light work assessment with a sit-stand-at-will limitation.

But the addition of the sit-stand option to the RFC assessment only partly explains why the ALJ omitted a specific limitation for a cane. True, taking the words "at will" at face value, the ALJ possibly meant that Palmer could sit as much as she wanted, even all day. That means that the ALJ effectively eliminated the standing-or-walking-for-six-hours requirement of light work. And, as noted, that requirement is tied to the requirement for "frequent lifting or carrying of objects weighing up to 10 pounds." *See* SSR 83-10, 1983 WL 31251, at *6 ("*Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday*, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." (emphasis added)). So, perhaps, the ALJ's sit-stand-at-will limitation also eliminated the light-work requirement of frequently carrying 10-pound objects. But that still leaves the light-work requirement that Palmer be able to lift 20 pounds, and it is not clear why the ALJ thought that Palmer—who said she used objects in her house to get around—could do that. *Cf. Latham v. Comm'r of Soc. Sec.*, No. 16-CV-10690, 2017 WL 1173773, at *2 (E.D. Mich. Mar. 30, 2017) (finding that cane use was consistent with ability to lift 20 pounds where there was no evidence that the claimant needed a cane for balance). The sit-stand option also probably did not eliminate the need for Palmer to "occasionally climb, balance, stoop, kneel, crouch,

5

and crawl" (PageID.70–71); and it is not obvious that someone who used a cane could perform those movements. So the sit-stand-at-will limitation, insofar as it left intact the 20-pound lifting demand and the postural demands, does not fully explain why the ALJ did not include a specific cane limitation.

(The Court notes that if the sit-stand-at-will limitation gutted all the standing, walking, and carrying demands of "light" work, it would bring Palmer's RFC quite close to "sedentary" work. And, for someone of Palmer's age, an RFC of sedentary work generally results in a finding of disabled unless the claimant can perform her past work or has transferrable skills. *See Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 428 (6th Cir. 2015); *Gibbons v. Comm'r of Soc. Sec.*, No. 19-CV-33SR, 2020 WL 4432073, at *6 (W.D.N.Y. July 31, 2020).)

So the Court does not believe that the limitations of the RFC themselves explain why the ALJ did not include a limitation specific to Palmer's use of a cane. And in that type of situation—where the evidence and the RFC limitations are not readily reconcilable—an ALJ must explain how he accounted for the evidence in coming up with his RFC assessment. This articulation requirement is part of the relationship between administrative agencies and reviewing courts. *See Lowery v. Comm'r, Soc. Sec. Admin.*, 55 F. App'x 333, 339 (6th Cir. 2003) (providing that an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning"); *accord Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). And the articulation requirement is part of an ALJ's obligation in deciding whether someone is disabled under the Social Security Act: "The RFC assessment must include a narrative

6

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

In this Court's opinion, the ALJ's narrative does not satisfy the articulation requirements of *Lowery*, *Diaz*, and SSR 96-8p. To be sure, the ALJ did discuss medical records indicating that Palmer's right hip improved after her total hip replacement surgery in January 2017. (PageID.72–73.) But the ALJ seemed to overlook—or, at least, failed to mention—indications that Palmer still used a cane. For instance, the ALJ noted that in April 2017, Palmer said she was not having pain in her right hip and that her examination revealed full strength in her legs. (PageID.72.) But according to Dr. Taunt's notes from April 2017 (which appear to be the same notes that the ALJ referred to), "The current limp pattern is: slight. The following support device is used: cane for long walks. Walking distance: less than 5 blocks." (PageID.519.) As another example, the ALJ noted that imaging studies from January 2018, one year after surgery, indicated that hardware in Palmer's *right* hip was normal. (PageID.73 (citing "B17F").) But the same (or, at least, contemporaneous) treatment notes state that Palmer's *left* hip was causing her problems and that her left-hip arthritis was the worst possible on a four-point scale. (PageID.903–904.) Perhaps more importantly, the January 2018 notes state, "The current limp pattern is: *moderate*. The following support device is used: cane for long walks. Walking distance:

7

less than 5 blocks." (PageID.902 (emphasis added).) Apparently, Palmer's limp had worsened a year after her right-hip replacement.

The Commissioner points out that the ALJ cited records indicating normal strength in Palmer's legs, limited pain in her right hip, improvement in her right hip following surgery, and, in one case, a normal gait. (ECF No. 15, PageID.944–945, 955.) But when some of those very records (or, at least, contemporaneous records) reflect that Palmer was using a cane, merely *citing* records that show that Palmer had normal leg function does little to *explain* why Palmer did not need a cane limitation.

Accordingly, the Court finds that the ALJ's narrative does not adequately explain why, despite evidence of cane use, he did not include a limitation specifically for Palmer's cane use.

The Commissioner resists this conclusion in a number of ways; none persuade.

For one, the Commissioner points to SSR 96-9p and three cases applying that Ruling or otherwise discussing whether a cane is medically required. (ECF No. 15, PageID.952–53; ECF No. 23, PageID.1024.) SSR 96-9p states, "To find that a hand-held assistive device is medically required, there must be medical documentation [1] establishing the need for a hand-held assistive device to aid in walking or standing, and [2] describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). As to the first requirement, the Commissioner points out there are merely references to a 2015 prescription for a cane in the record, but the prescription itself is not part of the record. (ECF No. 15, PageID.952.) And even if there

8

was a prescription for a cane, the Commissioner says that under *Schwartz v. Commissioner of Social Security*, a mere prescription does not establish that a cane is "medically required" as that term is sued in 96-9p. *See* No. 4:18-CV-12190, 2019 WL 3943863, at *7 (Aug. 1, 2019), *report and recommendation adopted*, 2019 WL 3936666 (E.D. Mich. Aug. 20, 2019). (ECF No. 15, PageID.952.) The Commissioner also claims that *Scroggins v. Commissioner of Social Security* rejected a claim similar to Palmer's when the record lacked documentation that the claimant medically required a cane. No. 16-11913, 2017 WL 4230650, at *4 (E.D. Mich. Sept. 25, 2017). (ECF No. 15, PageID.953.) The Commissioner also cites *Carreon v. Massanari* for the following: "Because the cane was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work." 51 F. App'x 571, 575 (6th Cir. 2002). (ECF No. 15, PageID.953.)

The Commissioner's reliance on SSR 96-9p is misplaced. Perhaps, as the Commissioner argues, the evidence of record does not meet the "medically required" standard set out in that Ruling. The problem for the Commissioner, though, is that SSR 96-9p appears unrelated to the ALJ's error. The Ruling references 200-or-so jobs at the "sedentary" exertion level, i.e., an "occupational base," and then discusses limitations beyond those already included in sedentary work that erode this occupational base. *See* SSR 96-9P, 1996 WL 374185, at *5, *7 ("The following sections provide adjudicative guidance as to the impact of various RFC limitations and restrictions on the unskilled sedentary occupational base. . . . Medically required hand-held assistive device."). Thus, it appears that the point of the "medically required" test in SSR 96-9p is to identify those situations when the set of sedentary jobs is reduced by use of a hand-held assistive device.

*See id.* at *7 (comparing situations where a cane would and would not erode the occupational base). If a cane is not "medically required," then, apparently, the occupational base is not eroded and all sedentary jobs remain available to the claimant. *See id.* Here, though, the question is not whether there were sedentary jobs that Palmer could perform despite her use of a cane. Instead, the question is whether the ALJ should have included a cane limitation in his RFC assessment of Palmer, and, if not, should have better explained the omission. So SSR 96-9p does not directly address the ALJ's error.

As for the three cases applying SSR 96-9p or otherwise discussing the necessity of a cane, none show that the ALJ did not need to explain why he did not include a cane limitation in Palmer's RFC assessment. Unlike here, the claimant's doctor in *Carreon* said that the claimant did not need a cane and it was merely for "insurance." 51 F. App'x at 575. As for *Scroggins*, the claimant there did argue that the ALJ failed to address her use of a cane; but, unlike here, the only document she offered in support of her argument was a form from the medical-device company that supplied the cane. *See* 2017 WL 4230650, at *4 (order); 2017 WL 4973223, at *5 (report and recommendation). As for *Schwartz*, it appears that the claimant merely argued that the ALJ erred by not including a limitation for a cane in the RFC assessment. *See* 2019 WL 3943863, at *5 ("Plaintiff argues that the ALJ erred in determining that she does not require the use of a cane."). But the error here is the failure to include a limitation for a cane in the RFC assessment *or, if such an omission was justified, to explain the omission*.

The Commissioner next argues that a body of law "establishes that use of a cane does not *preclude* a light RFC," relying on *Marko v. Commissioner of Social Security*, No.

10

2:16-CV-12204, 2017 WL 3116246, 2017 WL 3116246, (E.D. Mich. July 21, 2017). (ECF No. 23, PageID.1023.) In *Marko*, the court stated, "[c]ase law in this district has found that the use of a cane does not preclude light work." *See id.* at *5 (collecting cases).

But in this Court's view, whether a claimant who uses a cane can walk for six hours in an eight-hour day and carry 10 pounds on a frequent basis must be decided on a case-by-case basis. Some claimants use a cane in limited fashion whereas others rely heavily on it. In any event, the issue here is not whether the need for a cane precludes light work. Again, the issue is that the ALJ needed to include a specific limitation for Palmer's use of a cane in the RFC or, if such a limited was not warranted, needed to better explain why that is so.

The Commissioner also argues that this case is like *Jones v. Commissioner of Social Security*, No. 19-2180, 2020 WL 2930716 (6th Cir. June 3, 2020), where the claimant used a cane and the Sixth Circuit found no error in the ALJ's RFC assessment. (ECF No. 23, PageID.1026.) But Jones' "best evidence [wa]s an observation from his physical therapist . . . that Jones came to the appointment using a cane." *Id.* at *5. Unlike Palmer, Jones did not even mention the need for a cane at his hearing before the ALJ. *See id.*

Finally, the Commissioner argues that Palmer herself testified that she hardly needed a cane. (*See* ECF No. 15, PageID.953; ECF No. 23, PageID.1025.) It is true, that after much questioning, Palmer conceded that she only used the cane "five minutes out of the day," four days per week, i.e., 20 minutes per week. (PageID.108–109.) But the testimony on this point is quite unclear (*see* PageID.105–109), and Palmer's limited use of her cane might be attributable to her not leaving the house very often. That certainly would

11

not be true for a fulltime job. More importantly, though, is that the ALJ formulated his RFC *before* learning that Palmer only needed to use a cane 20 minutes a week. (*See* PageID.103.) So that testimony cannot be the reason that the ALJ omitted a limitation specific to cane use.

In short, the Court believes that the ALJ should either include a limitation for use of a cane as part of his RFC assessment or better explain why such a limitation is not required.

## II.

Palmer asserts two other claims of error. She believes that the ALJ did not properly account for her COPD and asthma in deciding that she was not disabled from fulltime work. (ECF No. 14, PageID.934; ECF No. 16, PageID.969; ECF No. 21, PageID.1011.) Invoking *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008), Palmer also argues that the ALJ needed to obtain an updated medical expert's opinion on her functioning to properly assess her residual functional capacity. (*See* ECF No. 14, PageID.925–926; ECF No. 21, PageID.1002.)

While the Court has some concern that the ALJ's RFC is not based on an updated medical-expert assessment of her functioning, the Court declines to address these claims of error. Palmer does not claim that these alleged errors entitle her to an award of benefits; she only seeks remand based on them. (ECF No. 14, PageID.935; ECF No. 21, PageID.1012.) But this Court has already decided to remand this case on the basis that the ALJ did not adequately explain why he omitted a limitation for Palmer's use of a cane. And, in this Court's view, it is better for the ALJ to address Palmer's COPD, asthma, and *Deskin* arguments in the first instance.

### III.

For the reasons provided, the Court REJECTS the Magistrate Judge's recommendation to affirm the decision of the Commissioner of Social Security (ECF No. 18), GRANTS Palmer's motion for summary judgment (ECF No. 14), and DENIES the Commissioner's motion for summary judgment (ECF No. 15). The case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ is to decide whether a cane limitation should be added to Palmer's RFC assessment and, if not, explain why the evidence of her use of a cane does not warrant a cane limitation. The ALJ is also to address Palmer's arguments regarding her COPD, asthma, and the need for an updated medical-expert opinion.

SO ORDERED.

Dated: September 1, 2020

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE